UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAY ANTHONY WALLER,

                Petitioner,

v.                                        CASE NO. 12-14872
                                          HONORABLE DENISE PAGE HOOD

LLOYD RAPELJE,

                Respondent.

_____/

**OPINION AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS,**
**DENYING A CERTIFICATE OF APPEALABILITY, AND**
**GRANTING *IN FORMA PAUPERIS* STATUS ON APPEAL**

This matter has come before the Court on petitioner Jay Anthony Waller's *pro se* habeas corpus petition under 28 U.S.C. § 2254. Petitioner is a state inmate at Kinross Correctional Facility in Kincheloe, Michigan. He challenges his convictions for second-degree murder, Mich. Comp. Laws § 750.317, possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b, and carrying a concealed weapon (CCW), Mich. Comp. Laws  § 750.227. Petitioner is serving a sentence of twenty-eight to sixty years in prison for the murder conviction, a concurrent sentence of two to five years in prison for the CCW conviction,

and a consecutive sentence of two years in prison for the felony-firearm conviction.

Petitioner alleges that the trial court made certain errors at trial and at sentencing, that there was insufficient evidence to support his murder conviction, that the prosecutor engaged in misconduct, and that his trial and appellate attorneys were ineffective.  Respondent Lloyd Rapelje filed an answer to the habeas petition, urging the Court to deny the petition on grounds that Petitioner procedurally defaulted his claims about the prosecutor and trial counsel and that none of Petitioner's claims have merit. The Court agrees that Petitioner is not entitled to habeas relief. Accordingly, the habeas petition will be denied.  A procedural history of the case and an analysis of Petitioner's claims follow.

## I.  BACKGROUND

### A.  The Charges and Trial

Petitioner was charged in Ingham County, Michigan with open murder,[1] felony firearm, and CCW.  The charges arose from allegations

---

[1] A charge of "open murder" allows "the jury to find either first- or second-degree murder."  *Taylor v. Withrow*, 288 F.3d 846, 849 (6th Cir. 2002); *see also* Mich. Comp. Laws § 750.318, which provides that, when a person is indicted for murder of an unspecified degree, the jury must determine in its verdict whether the person is guilty of first- or second-degree murder.

2

that Petitioner shot and killed Dominic Carter outside Petitioner's residence at 1524 Bailey Street in Lansing, Michigan on September 15, 2008. Petitioner was tried in Ingham County Circuit Court where the evidence established that Petitioner and Carter were friends who lived a short distance away from each other.  On the afternoon of September 15, 2008, the two men argued about a camcorder that Petitioner thought Carter had stolen.   Petitioner asked for his  camcorder, but Carter denied knowing anything about it.  Petitioner then pulled out a gun and attempted to shoot Carter, who turned and tried to run away.  Petitioner fired at Carter  two more times, causing Carter to fall.  Petitioner left the scene in a friend's car, and Carter was pronounced dead in the emergency room of a local hospital.   A forensic pathologist testified that Carter died of two gunshot wounds, one on the left side of his lower back and one on the back of his left shoulder.

### 1.  Prosecution Witnesses

The most damaging trial testimony came from a few key prosecution witnesses.  Cheryl Crouch testified that she was living across the street from Petitioner's residence on September 15, 2008, and that she saw

3

Petitioner pull out a gun and shoot the victim two times.  She was unable to identify Petitioner in a photo array that the police showed her on the day of the shooting, but she did identify him in a line-up in July of 2009.

Evelyn Cain-Morgan was living with Cheryl Crouch on September 15, 2008.  She testified that she heard two gunshots and then went  outside. She saw Petitioner extend his arms in front of him seconds before the victim fell to the ground.

Racardo Payton testified pursuant to a plea agreement in an unrelated matter.  He claimed to have seen Dominic Carter run up to Petitioner on September 15, 2008, and swing his fist at Petitioner, When Petitioner pulled out a gun, Carter turned and ran, but Petitioner shot him and he fell.  Carter got back up and was shot again while his back was facing Petitioner.

Corey Dalton testified that, before the shooting Carter handed him a camcorder and asked him to sell it to make some money.  Petitioner later confronted Dalton and took the camcorder from him.  Dalton and Carter subsequently got back together and approached Petitioner, who was trying

4

to determine who stole the camera.  When Carter asked whether Petitioner thought he stole the camera, Petitioner pulled out a gun and shot Carter.

Michael Davis also witnessed the shooting.  He claimed that Petitioner shot Carter after Carter said, "If you think I'm stealing from you, what's poppin?"

Catrina Kay testified that she met Petitioner in Charlotte, North Carolina in mid-October of 2008.  She knew Petitioner as "RJ," which stood for Ramon Tyrone Jackson.  They lived together briefly in Charlotte, but on March 11, 2009, they had an argument.  Petitioner then sat her down on the bed and said she was going to die that day.  Petitioner subsequently told her that his real name was Jay Anthony Waller and that he was "on the run" for a murder in Michigan.  When Ms. Kay asked Petitioner why he killed the person, Petitioner told her that the person had stolen something from him.  Petitioner explained to Ms. Kay that, even though a friend of his had discouraged him from killing the person, Petitioner had said to his friend, "No, I am going to kill him."

Petitioner informed Ms. Kay that the victim later walked up to him and that they began to argue.  He (Petitioner) then pulled out his gun and shot

the victim three times.  He subsequently went to a hotel and watched a news report about the incident.  The next day, his uncle came to the hotel, took his identification, and told him that he would never again be Jay Anthony Waller.  His uncle then gave him some money, and he caught a bus to Charlotte.

Continuing, Ms.  Kay testified that, after this incident with Petitioner, she learned on the Internet that Petitioner was Michigan's most wanted criminal.  She then called the Michigan State Police, but maintained contact with Petitioner and visited him in Atlanta, Georgia in May of 2009. She later revealed to one of the victim's relatives that Petitioner was in Atlanta. Petitioner was arrested in Atlanta and brought to Michigan for trial.

### 2.  The Defense

Petitioner produced two witnesses.  Christina Martinez testified for the defense that she saw Dominic Carter on the morning of the shooting and that he was angry about something.  The second defense witness, police officer Quincy Scroggins, testified that he found a work application with Petitioner's name on it at Dominic Carter's residence.   Officer

Scroggins further testified that, according to one Torri Golladay, Petitioner and Dominic Carter were friends and that they interacted regularly.

The defense theory was that the police did a sloppy job of investigating the case and that the prosecution witnesses were not credible, either because they had a motive for testifying as they did or because their testimony was inconsistent with their actions or prior statements. Defense counsel maintained in closing arguments that the evidence, or lack thereof, was consistent with a verdict of not guilty and that, at most, the jury could find Petitioner guilty of voluntary manslaughter.

## B.  The Verdict and Direct Appeal

On the murder count, the trial court instructed the jury on first-degree (premeditated) murder, second-degree murder, and voluntary manslaughter. The jury's options on the other counts was a verdict of not guilty or guilty. On February 4, 2010, the jury found Petitioner guilty of second-degree murder, Mich. Comp. Laws § 750.317, felony firearm, Mich. Comp. Laws § 750.227b, and CCW, Mich. Comp. Laws § 750.227. On March 24, 2010, the trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of twenty-

eight to sixty years in prison for the murder conviction and two to five years in prison for the CCW conviction.

On direct appeal, Petitioner argued through counsel that:  (1) the denial of his motion for a directed verdict constituted reversible error; (2) the verdict was based on insufficient evidence; and (3) the assessment of ten points for offense variable 19 constituted reversible error.  In a *pro se* supplemental brief, Petitioner claimed that:  (1) the introduction of testimony regarding other "bad acts" deprived him of a fair trial, and defense counsel was ineffective for failing to object; (2) the trial court erred by limiting the amount of the testimony re-read to the jury; and (3) the prosecutor engaged in misconduct by presenting false and misleading testimony and by vouching for witnesses.  The Michigan Court of Appeals affirmed Petitioner's convictions and sentence in an unpublished, *per curiam* opinion.  *See People v. Waller*, No. 297639, 2011 WL 2342698 (Mich. Ct. App. June 14, 2011).

Petitioner raised the same six claims in an application for leave to appeal in the Michigan Supreme Court.  On December 28, 2011, the Michigan Supreme Court denied leave to appeal because it was not

8

persuaded to review the issues.  *See People v. Waller*, 490 Mich. 969; 806 N.W.2d 732 (2011).[2]

## C.  State Collateral Review and the Habeas Petitions

On October 4, 2012, Petitioner filed a motion for relief from judgment, arguing that his trial and appellate attorneys were ineffective.  On October 9, 2012, the trial court denied Petitioner's motion on the ground that Petitioner could have raised his claims on direct appeal.

On November 1, 2012, Petitioner commenced this action.  *See* Document No. 1.  In support of his request for relief, Petitioner asserted the six claims that he raised on direct appeal and the two claims that he raised in his motion for relief from judgment.[3]  Petitioner explained in his habeas petition that he exhausted state remedies for his first six claims and that he

---

[2]  Justice Michael F. Cavanagh voted to grant leave to appeal.

[3]  Specifically, Petitioner claimed that: (1) the trial court erred by denying his motion for a directed verdict of acquittal on the charge of first-degree murder; (2) there was insufficient evidence of intent to commit second-degree murder; (3) the trial court erred in assessing ten points for offense variable 19 of the Michigan sentencing guidelines; (4) evidence of other "bad acts" deprived him of due process and a fair trial; (5) the trial court erred by limiting the amount of testimony that could be re-read to the jury; (6) the prosecutor engaged in misconduct by presenting false and misleading testimony and vouching for a witness; (7) trial counsel was ineffective; and (8) appellate counsel was ineffective.  In his seventh claim, Petitioner contended that his trial attorney failed to:  conduct a thorough pretrial investigation; object to prosecutorial misconduct and to a witness appearing in shackles; prepare for trial and submit motions; and subject the prosecution's case to adversarial testing.  Petitioner also asserted that the cumulative effect of these errors deprived him of due process.

was in the process of exhausting state remedies for his seventh and eighth claims. He asked the Court to hold his habeas petition in abeyance while he pursued additional state remedies. In an order dated February 7, 2013, the Court granted Petitioner's request for a stay and closed this case for administrative purposes. *See* Docket No. 7.

Petitioner subsequently appealed the state trial court's denial of his motion for relief from judgment. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented," *People v. Waller*, No. 315421 (Mich. Ct. App. Sept. 18, 2013), and on January 31, 2014, the Michigan Supreme Court denied leave to appeal because Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Waller*, 495 Mich. 936; 843 N.W.2d 187 (2014).

On April 14, 2014, Petitioner filed an amended habeas corpus petition, raising the eight claims that he presented to the state courts. *See* Document No. 9, which incorporates by reference Petitioner's state-court briefs. The Court then re-opened this case, *see* Document No. 11, and served the amended petition on Respondent, who filed an answer to the amended petition through counsel, *see* Document No. 15. Petitioner filed a

reply, *see* Document No. 17, and the case is now ready for an adjudication of Petitioner's claims.

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently

2:12-cv-14872-DPH-DRG Doc # 20 Filed 07/29/16 Pg 12 of 46 Pg ID 1319

> than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III.  ANALYSIS

## A.  Claim One:  Improper Denial of the Motion for a Directed Verdict

Petitioner alleges that the trial court erred when it denied his motion for a directed verdict of acquittal on the charge of first-degree murder. Petitioner claims that the prosecution failed to establish the element of premeditation.  The Michigan Court of Appeals adjudicated this claim on the merits and rejected it on the basis that the evidence was sufficient to warrant the denial of Petitioner's motion for a directed verdict.

### 1.  First-Degree Murder and the Standard for Motions for a Directed Verdict of Acquittal

In Michigan, when "assessing a motion for a directed verdict of acquittal, a trial court must consider the evidence presented by the prosecution to the time the motion is made and in a light most favorable to the prosecution, and determine whether a rational trier of fact could have

found that the essential elements of the crime were proved beyond a reasonable doubt." *People v. Riley*, 468 Mich. 135, 139-40; 659 N.W.2d 611, 613-14 (2003). "To establish first-degree premeditated murder, the prosecution must prove that the defendant intentionally killed the victim and the act of killing was deliberate and premeditated." *People v. Haywood*, 209 Mich. App. 217, 229; 530 N.W.2d 497, 503 (1995). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Morrin*, 31 Mich. App. 301, 329; 187 N.W.2d 434, 449 (1971) (footnote omitted). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look at his actions. This time interval may be minimal." *People v. Gonzalez*, 178 Mich. App. 526, 531; 444 N.W.2d 228, 230 (1989) (internal citation omitted).

### 2. Application

The state trial court denied Petitioner's motion for a directed verdict of acquittal because Petitioner informed a witness that he had contemplated shooting the victim. The trial court also pointed out that Petitioner pulled out a gun and fired it after the victim turned and ran. The trial court noted

that Petitioner could have reflected on his actions after the victim turned and ran and, therefore, the jury could find that he premeditated his actions. (Trial Tr. Vol. IX, 258-59, Feb. 2, 2010).

The Michigan Court of Appeals agreed that the evidence was sufficient to warrant the denial of the motion for a directed verdict.   In reaching this decision, the Court of Appeals pointed out that Petitioner

> was angry with [Dominic] Carter and believed that Carter had stolen from him, and that he [Petitioner] took a gun to the scene.  The medical evidence established that Carter was shot in the back.  This evidence was consistent with [Catrina] Kay's testimony, in which she recounted how defendant had confessed to the killing, and that he had told a friend prior to the shooting that he was going to kill Carter.

*Waller*, 2011 WL 2342698, at *3.  To the extent Petitioner is arguing that the state courts misapplied state law and improperly refused to grant relief on his motion for a directed verdict, his claim is not cognizable in this federal habeas corpus proceeding.  *King v. Trippett*,  27 F. App'x 506, 510 (6th Cir. 2001).

Furthermore, Petitioner was acquitted of first-degree murder and convicted of the less serious offense of second-degree murder.  Any error in submitting the first-degree murder charge to the jury arguably was

harmless, because Petitioner was acquitted of that charge.  *See Daniels v. Burke*, 83 F. 3d 760, 765 n. 4 (6th Cir. 1996) (stating that it was "not clear that we must reach the question of the sufficiency of the evidence at all in this case.   Some courts, under similar facts have concluded that submission to the jury of a charge constituted harmless error in light of petitioner's acquittal on that charge.").

Petitioner maintains that the jury's verdict could have been the result of a compromise and that the jurors might have found him guilty of voluntary manslaughter if they had not been forced to consider whether he premeditated and deliberated the victim's death.   The record, however, indicates that Petitioner had enough time to think about what he was going to do and to evaluate his options.   He pulled out a gun and shot the unarmed victim two times in the back after the victim turned to leave.   He also confessed to Catrina Kay that, when a friend suggested fighting with the victim, he rejected the suggestion and told the friend that he was going to kill the victim.

Because there was sufficient evidence of premeditation and deliberation, the trial court did not deprive Petitioner of his constitutional

rights by denying his motion for a directed verdict of acquittal. The Court therefore declines to grant relief on Petitioner's first claim.

## B. Claim Two: Insufficient Evidence

Petitioner alleges next that the prosecutor presented insufficient evidence to support his conviction for second-degree murder. Petitioner claims that there was no evidence he had the requisite state of mind for second-degree murder and that his guilt was not proven beyond a reasonable doubt. The Michigan Court of Appeals disagreed and concluded that there was sufficient evidence of Petitioner's intent.

The question on habeas review of a challenge to the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n. 16. In Michigan,

> [t]he elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325 (1996).

17

> Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.  *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304 (1980).

*People v. Goecke*, 457 Mich. 442, 463-64; 579 N.W.2d 868, 878 (1998).

The only element in dispute here is Petitioner's intent.  As the state court noted, however, the fact that Petitioner shot Dominic Carter twice after accusing him of theft was sufficient evidence for the jury to find that Petitioner intended to cause great bodily harm or acted with wanton and willful disregard for the likelihood that his behavior would cause death or great bodily harm.  And, as noted above, Petitioner confessed to Catrina Kay that he had intended to kill Carter.  (Trial Tr. Vol. V, 41, Jan. 26, 2010).

A rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner had the requisite intent to be found guilty of second-degree murder.  The state appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, *Jackson,* and Petitioner has no right to relief on the basis of his second claim.

## C. Claim Three:  Error in Scoring Offense Variable 19

Petitioner alleges that the trial court erred by assessing ten points for offense variable 19 of the Michigan sentencing guidelines.  The Michigan Court of Appeals adjudicated this claim on the merits and rejected it.

"Offense variable 19 is threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services."  Mich. Comp. Laws § 777.49.  A score of ten points is appropriate if "[t]he offender . . . interfered with or attempted to interfere with the administration of justice."  Mich. Comp. Laws § 777.49(c).  "The investigation of crime is critical to the administration of justice," *People v. Barbee*, 470 Mich. 283, 288; 681 N.W.2d 348, 351 (2004), and offense variable 19 "may be scored for conduct that occurred after the sentencing offense was completed."  *People v. Smith*, 488 Mich. 193, 202; 793 N.W.2d 666, 671 (2010).

Petitioner claims that he merely left the scene of the crime and the jurisdiction.  He denies tampering with witnesses or evidence, and he asserts that he did not hinder the criminal investigation because the police determined on the day of the shooting that he was the shooter.  The

evidence at trial, however, established that Petitioner left the scene of the crime after the shooting and subsequently moved to Charlotte, North Carolina where he used an alias and false identification.  From Charlotte, he moved to Atlanta, Georgia where he was arrested after Catrina Kay revealed Petitioner's whereabouts. These facts indicate that Petitioner was attempting to evade arrest, prosecution, and the administration of justice.

Even if the trial court erred in assessing ten points for offense variable 19, a state court's interpretation and application of its sentencing laws and guidelines "is a matter of state concern only."  *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003).  "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  As Petitioner has not demonstrated that the scoring of his sentencing guidelines rose to the level of a constitutional violation, his claim is not cognizable on habeas corpus review.

## D.  Claim Four:  Prejudicial Introduction of "Bad Acts" Evidence

Petitioner alleges next that the prosecution's introduction of other "bad acts" evidence deprived him of due process and a fair trial. Petitioner contends that the evidence induced the jury to convict him on the basis that he had a propensity to commit crime. Petitioner further alleges that his trial attorney was ineffective for failing to raise an adequate objection to the evidence.

The evidence in dispute is Catrina Kay's testimony that, on March 11, 2009, while Petitioner was living with her in North Carolina, they got into an argument. Petitioner then sat her down on the bed and said that she was going to die that day.

The prosecutor used evidence of Petitioner's threat to kill Ms. Kay as a context for Petitioner's confession to Ms. Kay that he was using an assumed name, was wanted for murder in Michigan, and had intended to murder the victim. (Trial Tr. Vol. V, 37 - 42, Jan. 26, 2010). Petitioner claims that Ms. Kay's testimony should have been excluded under the Michigan Rules of Evidence because it was irrelevant and more prejudicial than probative of whether he premeditated the murder. The Michigan Court of Appeals disagreed with Petitioner and concluded that the evidence

was admitted for a proper purpose, that the evidence was relevant, and that it was highly probative of Petitioner's mental state.

The state appellate court's ruling that the testimony was admissible under the Michigan Rules of Evidence binds this Court sitting in habeas corpus.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Israfil v. Russell*, 276 F.3d 768, 771-72 (6th Cir. 2001) (stating that, "[b]ecause state courts are the final authority on state law, federal courts must accept a state court's interpretation of its statutes and its rules of practice") (internal citation omitted)).  Although Petitioner claims that the testimony induced the jury to convict him on the basis that he had a propensity to commit crime, "there is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Consequently, "there is no Supreme Court precedent that the trial court's decision [on Petitioner's claim] could be deemed 'contrary to' under AEDPA."  *Id.* at 513.

The trial court, moreover, instructed the jurors that they could consider testimony about improper conduct for which Petitioner was not on

trial only to determine whether it tended to show the context in which Petitioner made his statements to Ms. Kay. The court stated that the jurors should not use the evidence to conclude that Petitioner was a bad person or likely to commit crime and that the jurors should not convict Petitioner because they thought he was guilty of other bad conduct. (Trial Tr. Vol. IX, 352-53, Feb. 2, 2010). "[J]uries are presumed to follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

To conclude, Petitioner's claim is not cognizable on habeas review, and, even if it were, the alleged error did not rise to the level of a due-process violation in light of the trial court's jury instruction. The Court therefore denies relief on Petitioner's claim regarding the admission of "bad acts" evidence.

Petitioner's claim that his attorney failed to make an adequate objection to the evidence likewise lacks merit. Defense counsel made the same arguments that Petitioner is making: that the evidence was more prejudicial than probative and that it was offered for an improper purpose, that is, to show that Petitioner was a bad person and had a propensity to commit crimes. (Trial Tr. Vol. V, 15-18, Jan. 26, 2010). Counsel's

argument did not persuade the trial court to exclude the evidence, but the fact that he was unsuccessful in his efforts does not mean he was ineffective.  *Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983).

## E.  Claim Five:  Denial of an Impartial Jury

Petitioner asserts that the trial court deprived him of a fair and impartial jury when the court re-read only a portion of the testimony that the jurors requested during their deliberations.  Petitioner claims that, in doing so, the trial court invaded the province of the jury and deprived him of a fair and accurate verdict.  The Michigan Court of Appeals concluded on review of this claim that the trial court did not abuse its discretion when it limited the re-reading of testimony.

### 1.  Clearly Established Federal Law

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."  U.S. Const. amend. VI.  This right "is applicable to the states via the Fourteenth Amendment."  *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (citing *Turner v. Louisiana*, 379 U.S. 466 (1965), and *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).  The failure

to accord an accused a fair hearing before a panel of impartial, indifferent jurors violates even the minimal standards of due process.  *Irvin*, 366 U.S. at 722.

Petitioner has not cited any Supreme Court decision that holds it is a violation of the right to an impartial jury not to read a witness's entire testimony to a deliberating jury on request.  Nor has the Court found any Supreme Court decision directly on point.  The United States Court of Appeals for the Sixth Circuit has said that

> [i]t is generally within the trial court's sound discretion to determine whether particular jury requests will be granted. Such a ruling, like rulings concerning the admissibility of evidence, may not form the basis of federal habeas relief unless a constitutional question is raised.

*Spalla v. Foltz*, 788 F.2d 400, 405 (6th Cir. 1986)(internal citation omitted).

In exercising its discretion, a "court 'can and should take into consideration the reasonableness of the jury's request and the difficulty of complying therewith.' "  *United States v. Padin*, 787 F.2d 1071, 1076 (6th Cir. 1986) (quoting *United States v. Almonte*, 594 F.2d 261, 265 (1st Cir. 1979)).  The dangers inherent in re-reading testimony to a deliberating jury are that "undue emphasis may be accorded such testimony" and "the

limited testimony that is reviewed may be taken out of context by the jury."
*Id.* But a trial court's error is remediable on a petition for writ of habeas corpus only if the error " 'rises to the level of depriving the defendant of fundamental fairness.' " *Spalla*, 788 F.2d at 405 (quoting *Matlock v. Rose*, 731 F.2d 1236, 1242 (6th Cir. 1984)).

### 2. Application

The transcript of trial indicates that the jury asked to have the testimony of four witnesses (Michael Davis, Cheryl Crouch, Corey Dalton, and Racardo Payton) read back to them. A court officer responded to this request by suggesting that the jurors be more specific. The jurors then sent a second note to the trial court, requesting the four witnesses' testimony regarding their observations of the shooting.

When the trial court informed the prosecutor and defense counsel about the jury's requests, defense counsel expressed his concern about limiting the amount of testimony that was read to the jurors. The trial court, however, indicated that it would take hours to read the entire testimony of the four witnesses. The trial court also pointed out that the jurors had already heard the testimony once, they took notes, they listened to cross-

examination, and they heard closing arguments.  According to the trial court, the jurors also had no difficulty pinpointing exactly what they wanted to hear and then modifying their request to limit the amount of testimony to be read to them.  The court concluded its discussion with the attorneys by exercising its discretion under state law and ruling that the reading of testimony would be limited to the four witnesses' testimony about the shooting.  (Trial Tr. Vol. X, 3-6, Feb. 3, 2010).

Defense counsel renewed his objection to the trial court's ruling after reviewing the material that the trial court intended to read to the jury.  The trial court denied the objection after determining that defense counsel's request – that the entire testimony of the four witnesses be read back to the jury –  was unreasonable.  The court reporter then read a portion of the testimony from Michael Davis, Cheryl Crouch, Corey Dalton, and Ricardo Payton.  (*Id.* at 8-10).  Immediately after the reading, the trial court cautioned the jurors that they "should never just think about one part of a person's testimony and ignore all the rest," and that they "should consider all the testimony and all of the evidence in the case."  (*Id.* at 10).

The jurors made no further requests for a reading of testimony, and the trial court's cautionary jury instruction adequately addressed the dangers of placing undue emphasis on testimony and taking limited testimony out of context. Under the circumstances, Petitioner was not deprived of a fair trial or an impartial jury. Habeas relief is not warranted on his claim.

## F. Claim Six: Prosecutorial Misconduct

Petitioner claims that the prosecutor engaged in misconduct that deprived him of a fair trial. Respondent argues that this claim is procedurally defaulted because Petitioner did not object to the prosecutor's remarks at trial and because the Michigan Court of Appeals reviewed the claim for "plain error" due to Petitioner's failure to object.

A procedural default, however, is not a jurisdictional matter, *Trest v. Cain*, 522 U.S. 87, 89 (1997), and Petitioner's claim lacks substantive merit. Furthermore, an analysis of whether Petitioner's claim is procedurally defaulted "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). The Court therefore proceeds directly to the merits of Petitioner's claim.

### 1.  Clearly Established Federal Law

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."  *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  "Before a federal court may overturn a conviction resulting from a state trial . . . it must be established not merely that the [State's action] is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Id.* at 221 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)) (ellipsis and alteration added in *Phillips*).  "For relief to be granted, the misconduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (quotation marks omitted) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

### 2.  Application

### a. Alleged Perjury

Petitioner claims that the prosecutor presented false and misleading testimony.  The basis for this argument appears to be that at least one witness received a benefit for his testimony and some witnesses' testimony differed from their statements to the police shortly after the shooting.

Prosecutors may not deliberately deceive a court or jurors by presenting evidence that they know is false.  *Giglio v. United States*, 405 U.S. 150, 153 (1972).   But to prevail on a claim that the prosecutor relied on false testimony, a habeas petitioner must show that (1) the testimony was actually false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false.  *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

Petitioner implies that Racardo Payton and Michael Davis testified falsely at trial because they initially lied to the police or simply failed to disclose what they witnessed at the time.  (Trial Tr. Vol. VI, 96, Jan. 28, 2010 (Racardo Payton's testimony); *id.* at 169-70 (Michael Davis' testimony)).  "[M]ere inconsistencies in testimony by government witnesses

do not establish knowing use of false testimony." *Lochmondy*, 890 F.2d. at 822 (citing *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987)). This appears to be particularly true here because both Payton and Davis admitted at trial that they lied to the police because they were afraid at the time. (Trial Tr. Vol. VI, 91, 110-11, Jan. 28, 2010 (Racardo Payton's testimony); *id.* at 169-71 (Michael Davis' testimony)).

Petitioner has failed to show that Payton and Davis or anyone else committed perjury at his trial. Even if one were to assume that Payton and Davis lied under oath at trial, Petitioner has failed to show that the prosecutor knew Payton and Davis were lying. The Court therefore rejects Petitioner's perjury claim.

### b. The Alleged Misstatement of Facts

Petitioner claims that the prosecutor misstated the facts in closing arguments when he said that Racardo Payton pleaded guilty in an unrelated case to a life offense and would be serving a sentence of twenty-seven months to life imprisonment. (Trial Tr. Vol. IX, 293, Feb. 2, 2010). Prosecutors may not misrepresent the facts in evidence, "because doing so 'may profoundly impress a jury and may have a significant impact on the

jury's deliberations.' " *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (quoting *DeChristoforo*, 416 U.S. at 646).

Petitioner asserts that Payton's maximum sentence was not life imprisonment. The record, however, indicates that Payton pleaded guilty to assault with intent to rob while armed, an offense which carries the possibility of life imprisonment. *See* Mich. Comp. Laws § 750.89. Payton, in fact, testified that he pleaded guilty to an offense that carried a maximum penalty of life imprisonment and that his plea agreement called for a minimum sentence of twenty-seven months in prison. (Trial Tr. Vol. VI, 69, Jan. 28, 2010). Thus, the prosecutor did not misstate the facts.

### c. Vouching

Petitioner blames the prosecutor for stating that the prosecution had leverage over one eyewitness through a plea agreement in exchange for the witness's truthful testimony. (Trial Tr. Vol. IX, 275, Feb. 2, 2010). The prosecutor also said that the State could withdraw its plea agreement with Racardo Payton if Payton did not testify truthfully. (*Id*. at 293-94).

Although Petitioner claims that these comments amounted to vouching, prosecutorial vouching "occur[s] when the prosecutor 'supports

the credibility of a witness by indicating a personal belief in the witness's credibility[,] thereby placing the prestige of a [prosecutor's office] behind that witness' through 'comments that imply that the prosecutor has special knowledge of facts not in front of the jury.' " *Davis v. Booker*, 589 F.3d 302, 310 (6th Cir. 2009) (quoting *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)). This did not occur at Petitioner's trial, as the prosecutor did not express a personal belief in Payton's testimony, nor say that he knew facts not before the jury. The prosecutor did not vouch for Payton.

### d. Shackling

Petitioner claims that it was improper to allow Racardo Payton to be shackled while he testified at trial. The Constitution forbids the use of visible shackles on a defendant during the guilt or penalty phase of a criminal prosecution "unless that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial." *Deck v. Missouri*, 544 U.S. 622, 624 (2005). Payton, however, was a prosecution witness, and "[t]he Supreme Court of the United States has not clearly established a constitutional right to have witnesses presented without restraints and in street clothes." *Torrez v.*

*McKee*,  601  F.  Supp.  2d  920,  924-25  (W.D.  Mich.  2009).    Petitioner's shackling argument therefore fails.

### e.  Denigrating the Defense

Petitioner  claims  that  the  prosecutor  acted  improperly  when  he characterized  defense  counsel's  role  as  trying  to  confuse  the  jury. Petitioner  contends  that  this  comment  not  only  disparaged  defense counsel,  but  it  gave  the  impression  that  defense  counsel  had  to  resort  to underhanded tactics because no legitimate defense was available.

A prosecutor may not "make unfounded and inflammatory attacks on the opposing advocate."  *United States v. Young*, 470 U.S. 1, 9 (1985).  But Petitioner's  objection  is  the  prosecutor's  comment  that  defense  counsel vigorously  cross-examined  Racardo  Payton,  "barraged"  Payton  with questions, and tried to put words in Payton's mouth. (Trial Tr. Vol. IX, 294, Feb. 2, 2010).  The prosecutor's point was that, despite the experienced defense  attorney's  barrage  of  questions,  he  was  unable  to  elicit  any inconsistency in what Racardo Payton saw.  *See id.*  It was not improper to highlight an inadequacy in the defense.  *United States v. Lawrence*, 735 F.3d 385, 435 (6th Cir. 2013), *cert. denied*, 135 S. Ct. 753 (2014).  The

Court therefore finds that the prosecutor's comment did not amount to denigration of the defense.

### f.  Comparing Petitioner's Case to that of a Child Molester

Petitioner claims that the prosecutor improperly compared Petitioner's case to that of a child molester.  Petitioner misconstrues the record.  The prosecutor did not compare Petitioner to a child molester. Instead, he argued that a person might have adequate cause to kill someone if the other person had molested or hurt one's child. (Trial Tr. Vol. IX, 314 Feb. 1, 2010).  His point was that the victim's act of stealing Petitioner's camcorder was not adequate cause to kill the victim and, therefore, voluntary manslaughter was not an appropriate verdict. *Id.* The Court finds no impropriety in the prosecutor's argument.

For all the reasons given above, the Court concludes that the prosecutor's conduct and comments were not improper and did not infect Petitioner's trial with such unfairness as to deprive him of due process. Habeas relief is not warranted on Petitioner's prosecutorial-misconduct claim.

## G.  Claim Seven:  Ineffective Assistance of Trial Counsel

Petitioner claims that his trial attorney was ineffective because the attorney failed to (1) conduct a thorough pretrial investigation, (2) object to prosecutorial misconduct and to a witness being shackled at trial, and (3) prepare for trial, submit motions, and subject the prosecution's case to adversarial testing.  Petitioner also claims that the cumulative effect of these errors deprived him of due process and a fair trial.

Respondent argues that Petitioner's claim about trial counsel is procedurally defaulted because the state trial court ruled on collateral review that Petitioner could have raised his claim on direct appeal.  The Court excuses the alleged procedural default and proceeds to address Petitioner's claim because the claim lacks merit, and a procedural-default analysis "adds nothing but complexity to the case."  *Babick*, 620 F.3d at 576.

### 1.  Clearly Established Federal Law

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), is clearly established federal law for purposes of Petitioner's ineffective-assistance-of-counsel claims.  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).  Under *Strickland*, a defendant must show that his trial

attorney's "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The "deficient performance" prong of the *Strickland*, test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

### 2.  Application

#### a.  The Pretrial Investigation

Petitioner asserts that defense counsel failed to conduct a thorough pretrial investigation.  Specifically, Petitioner contends that defense counsel failed to interview the following persons: witnesses listed in the criminal information or in police reports; Petitioner's uncle; and Petitioner's family members, who could have verified that Petitioner feared the victim when the victim swung at him, because Petitioner had a head injury.

Defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691.  "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  An attorney's "failure to conduct a reasonable investigation into . . . 'a known and potentially important witness' violate[s] [a defendant's] Sixth Amendment right to the effective assistance of counsel."  *Id.* at 259 (quoting *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987)).

Here, defense counsel carefully cross-examined prosecution witnesses despite the alleged failure to interview them. Interviewing Petitioner's uncle would not have helped Petitioner's case, because it was the uncle who supposedly helped Petitioner flee the state and falsify his identity. Failing to interview Petitioner's family regarding a prior head injury also did not amount to deficient performance because the alleged injury and fear of being hurt did not justify shooting the unarmed victim.

Petitioner also alleges that defense counsel did not request the aid of an investigator, did not investigate other witnesses at the scene, and did not develop the fact that the victim was known to carry a firearm. Suggesting that the victim was known to carry a firearm would not have made a difference in the trial because witnesses at trial testified that the victim was not armed when he argued with Petitioner, that he merely swung his fist at Petitioner, and that Petitioner shot the victim in the back after the victim turned away from him. Therefore, Counsel was not ineffective in that regard. Counsel also was not ineffective for failing to hire an investigator, because the police conducted an adequate investigation,

and Petitioner merely speculates that additional witnesses or evidence would have been favorable to the defense.

Finally, Petitioner asserts that defense counsel did not subpoena e-mail messages that he and Catrina Kay exchanged.  Petitioner contends that the e-mails would have demonstrated that Ms. Kay knew Petitioner was wanted for murder before he informed her of that, and this information would have eliminated the need to have Ms. Kay testify.  Petitioner, however, has produced no evidence demonstrating that Ms. Kay was aware of Petitioner being a suspect in a murder case before Petitioner revealed that information to her.

For all the foregoing reasons, defense counsel's alleged failure to investigate did not amount to deficient performance, and the allegedly deficient performance did not prejudice the defense.

### b.  The Failure to Object to Prosecutorial Misconduct and to Shackling

Petitioner alleges next that trial counsel was ineffective for failing to object to the prosecutor's misconduct and to the fact that Racardo Payton was shackled at trial.   The Court concluded above that neither the

prosecutor's conduct, nor Payton's shackling, deprived Petitioner of a fair trial.  Defense counsel therefore was not ineffective for failing to object.

### c. The Alleged Failure to Prepare for Trial, Submit Motions, and Subject the Prosecutor's Case to Meaningful Adversarial Testing

Petitioner asserts that Catrina Kay perjured herself when she testified at trial that she did not know Petitioner's true identity before he informed her of who he was and that he was wanted for murder in Michigan. Petitioner claims that the e-mails he exchanged with Ms. Kay would prove this fact and that defense counsel was ineffective for not moving for a continuance to obtain the e-mails.

Petitioner has not presented the Court with any documentation supporting his allegation that Ms. Kay knew his true identity before he revealed it to her.  Furthermore, the record indicates that the e-mails in question were exchanged after Petitioner revealed his identity to Ms. Kay and moved to Atlanta.  (Trial Tr. Vol. V, 23-24, 60-61, 64, Jan. 26, 2010). Defense counsel requested the e-mails on the fifth day of trial.  The trial court questioned the probative value of the e-mails and denied defense counsel's request for the e-mails.  The court stated that counsel's request

was untimely and that it was unlikely the e-mails could be acquired before the trial concluded.   The court also stated that it did not think it had jurisdiction to request the e-mails because they were transmitted in North Carolina or Georgia.  *Id.* at 23-24.

In light of the trial court's comments, it is likely that the trial court would have denied a motion to adjourn the trial until defense counsel could obtain the e-mails.  Defense counsel was not ineffective for failing to make a futile motion.

### d.  Cumulative Effect of Errors

Petitioner's final claim about trial counsel is that the cumulative effect of counsel's errors deprived him of due process and a fair trial.  The Court rejects this claim because it is not cognizable on habeas corpus review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011).

## H.  Claim Eight:  Ineffective Assistance of Appellate Counsel

In his eighth and final claim, Petitioner alleges that his appellate attorney was ineffective for failing to argue on direct appeal that trial counsel was ineffective.

> An appellate attorney is not required to raise every non-frivolous claim requested by his or her client if counsel decides,

> as a matter of professional judgment, not to raise the claim. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  In  f a c t ,  t h e process of " 'winnowing out weaker arguments on appeal' " is "the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Barnes*, 463 U.S. at 751-52, 103 S.Ct. 3308). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  To demonstrate that appellate counsel was ineffective, Petitioner must show (1) that his attorney acted unreasonably in failing to raise Petitioner's claim about trial counsel and (2) there is a reasonable probability that he would have prevailed on appeal if his attorney had raised the issue.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694); *Etherton v. Rivard*, 800 F.3d 737, 748 (6th Cir. 2015), *petition for cert. filed*, No. 15-723 (U.S. Dec. 3, 2015).

Petitioner's arguments about trial counsel lack merit for the reasons given above.  "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).  The Court therefore declines to grant relief on Petitioner's claim about appellate counsel.

## IV.  CONCLUSION

The state court's adjudication of Petitioner's claims on the merits was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. As for the claims that the state court did not adjudicate on the merits, Petitioner has failed to demonstrate that his constitutional rights were violated.   The Court therefore denies the amended petition for writ of habeas corpus, Document No. 9.

## V.  DENYING A CERTIFICATE OF APPEALABILITY; GRANTING *IN FORMA PAUPERIS* ON APPEAL

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

44

Petitioner has failed to make a substantial showing of the denial of a constitutional right, and reasonable jurists would not conclude that Petitioner's claims deserve encouragement to proceed further. Accordingly, a certificate of appealability is not warranted in this case.

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed *in forma pauperis* is a lower standard than the standard for certificates of appealability. *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal could be taken in good faith. *Id.* at 764-765; 28 U.S.C. § 1915(a)(3). "Good faith" requires a showing that the issues raised are arguable on the merits and are not frivolous; it does not require a showing of probable success on the merits. *Foster*, 208 F. Supp. 2d at 765. Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the

issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal.

IT IS SO ORDERED.


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  July 29, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 29, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager